UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

---

MARY TASCHE
633 South 27th Street
Sheboygan, Wisconsin 53081

    Plaintiff,

v.

SENIOR LIFESTYLE CORPORATION
d/b/a COUNTRYSIDE MANOR
4228 Kadlec Drive
Sheboygan, Wisconsin 53083

    Defendant.

Case No.: 18-cv-761

**JURY TRIAL DEMANDED**

---

## COMPLAINT

---

COMES NOW Plaintiff, Mary Tasche, by her counsel, WALCHESKE & LUZI, LLC, as and for a claim against Defendant, alleges and shows to the Court as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA").

2. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367 because this case involves claims under Wisconsin's Wage Payment and Collection Laws ("WWPCL"), and these claims are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant resides and/or operates its business in the Eastern District of Wisconsin and the unlawful employment practices of which Plaintiff complains occurred within the Eastern District of Wisconsin.

**PARTIES**

4. Plaintiff, Mary Tasche, is an adult female resident of the State of Wisconsin with a post office address of 633 South 27th Street, Sheboygan, Wisconsin 53081.

5. Defendant, Senior Lifestyle Corporation d/b/a Countryside Manor, was, at all material times herein, a commercial entity with a principal address of 303 East Wacker Drive, Chicago, Illinois 60601.

6. Defendant owns, manages, and operates a physical location in Sheboygan, Wisconsin, located at 4228 Kadlec Drive, Sheboygan, Wisconsin 53083.

7. During the relevant time periods as stated herein, Defendant frequently engaged in business as "Countryside Manor" and/or "Countryside Manor (Sheboygan)."

8. During the relevant time periods as stated herein, Defendant employed approximately thirty-five (35) to fifty-five (55) employees, including Plaintiff, at its Sheboygan, Wisconsin location.

9. Defendant provides memory care, skilled nursing, rehabilitation, assisted living, and housing services to primarily the elderly, aging, and geriatric population across the United States.

10. During the relevant time periods as stated herein, Defendant was engaged in "commerce" and/or its employees were engaged in "commerce," as that term is defined under the FLSA.

11. During the relevant time periods as stated herein, Defendant's annual dollar volume of sales or business exceeded $500,000.

12. During the relevant time periods as stated herein, Defendant was an "employer" as that term is defined under the FLSA and the WWPCL.

13. During the relevant time periods as stated herein, Plaintiff was "employed" by and/or an "employee" of Defendant as these terms are defined under the FLSA and the WWPCL.

14. During the relevant time periods as stated herein, Plaintiff was engaged in commerce or in the production of goods for commerce.

## GENERAL ALLEGATIONS

15. On or about July 1, 2014, Defendant hired Plaintiff as the Director of Sales & Marketing of its Sheboygan, Wisconsin location.

16. During the entirety of her employment with Defendant, Plaintiff held the position of Director of Sales & Marketing of its Sheboygan, Wisconsin location.

17. During Plaintiff's employment with Defendant, she directly reported to a variety of individuals in the position of Executive Director at Defendant's Sheboygan, Wisconsin location, including: Angela Okoroma; Cheryl Hyde; Michael Davis; Brittany Suemnicht; Rebecca Black; Mary Rogala; and Rebecca Kiefer.

18. Upon information and belief, the Executive Directors of Defendant's Sheboygan, Wisconsin location to whom Plaintiff directly reported during her employment with Defendant all reported directly to David Richey, Defendant's Regional Manager/Director.

19. From approximately July 2014 to September 2016, Defendant compensated Plaintiff on a salary basis.

20. In approximately September 2016, Defendant began compensating Plaintiff on an hourly basis.

21. From approximately September 2016 until Plaintiff's last day of employment with Defendant, on or about September 15, 2017, Defendant compensated Plaintiff on an hourly basis.

22. From approximately September 2016 to September 15, 2017, Defendant compensated Plaintiff bi-weekly via direct deposit.

23. From approximately September 2016 to September 15, 2017, Plaintiff performed compensable work for Defendant in the position of Director of Sales & Marketing with Defendant's knowledge and/or at Defendant's direction.

24. From approximately September 2016 to September 15, 2017, Plaintiff consistently worked more than forty (40) hours per workweek.

25. Subsequent to approximately September 2016, the job duties of Plaintiff's Director of Sales & Marketing position were exactly the same, including but not limited to: making sales calls via telephone; travelling to meet with (prospective) customers, clients, families, and vendors; conducting tours of Defendant's Sheboygan, Wisconsin location; creating marketing materials, both in print and online; and arranging and holding networking, marketing, sales events and parties, including on weekends.

26. Subsequent to approximately September 2016, the job duties of Plaintiff's Director of Sales & Marketing position did not change or differ in any way as they existed prior to approximately September 2016.

27. In approximately September 2016, Suemnicht met with Plaintiff to discuss Defendant's decision to transition her from salary-based compensation to hourly-based compensation (hereinafter simply "the September 2016 meeting").

28. During the September 2016 meeting, Suemnicht told Plaintiff that Defendant was transitioning all of Defendant's Sales & Marketing Directors at its various locations, including her, from salary-based compensation to hourly-based compensation effectively immediately.

29. During the September 2016 meeting, Suemnicht told Plaintiff that, as part of Defendant's transition of its Sales & Marketing Directors from salary-based compensation to hourly-based compensation, "You will get paid for only eight hours a day no matter how many hours you work," or words to that effect.

30. During the September 2016 meeting, Suemnicht told Plaintiff that, as part of Defendant's transition of its Sales & Marketing Directors from salary-based compensation to hourly-based compensation, "You're going to get paid for only 40 hours per week no matter how many more hours you work," or words to that effect.

31. Beginning in approximately September 2016 and when Defendant transitioned Plaintiff from salary-based compensation to hourly-based compensation, Defendant's policy in practice was to compensate Plaintiff for only eight (8) hours of work per workday, regardless of whether Plaintiff worked more than eight (8) hours in a workday.

32. Beginning in approximately September 2016 and when Defendant transitioned Plaintiff from salary-based compensation to hourly-based compensation, Defendant's policy in practice was to compensate Plaintiff for only forty (40) hours of work per workweek, regardless of whether Plaintiff worked more than forty (40) hours in a workweek.

33. In approximately September 2016 and in addition to Plaintiff, Defendant transitioned Directors of other Departments at its Sheboygan, Wisconsin location – including Dietary, Maintenance, Activities, and Office – and other employees, including Robin Aldag and Lori Kuplick, from salary-based compensation to hourly-based compensation.

34. From approximately September 2016 to September 15, 2017, each of Defendant's Executive Directors at its Sheboygan, Wisconsin location, including Suemnicht, Black, Rogala, and Kiefer, informed Plaintiff that Defendant would compensate her for only forty (40) hours of work per workweek regardless of whether she worked in excess of forty (40) hours in a workweek.

35. Subsequent to approximately September 2016 and in addition to Plaintiff, Defendant did not compensate other hourly-paid Directors of other Departments at its Sheboygan, Wisconsin location, including Aldag and Kuplick, for hours worked in excess of forty (40) hours in a workweek.

36. From approximately September 2016 to September 15, 2017, Defendant's policy in practice was to have Plaintiff record her hours worked each workweek on hard copy timesheets and submit these timesheets to the Executive Director of Defendant's Sheboygan, Wisconsin location.

37. In approximately September 2016, Plaintiff's standard practice was to document all hours worked each workweek on her timesheet and submit her completed timesheets to Suemnicht. For example, during one workweek in approximately September 2016, Plaintiff documented on her timesheet that she had worked a total of approximately fifty-three and a half (53.5) hours that workweek.

38. In approximately September 2016 and when Plaintiff documented all of her hours worked each workweek on her timesheets and submitted her completed timesheets to Suemnicht, Suemnicht did not accept Plaintiff's completed timesheets and/or gave Plaintiff's completed timesheets back to Plaintiff to "re-do." For example, during the workweek in approximately September 2016 when Plaintiff documented on her timesheet that she had worked a total of approximately fifty-three and a half (53.5) hours that workweek, Suemnicht asked Plaintiff about her hours worked when Suemnicht received Plaintiff's timesheet. Plaintiff told Suemnicht that the

hours on her timesheet reflected her hours worked and that she usually worked between forty-five (45) and fifty-five (55) hours per week. Suemnicht responded by telling Plaintiff, "I don't know if I can pay you because we don't really do overtime," or words to that effect.

39. From approximately September 2016 to September 15, 2017, Defendant did not compensate Plaintiff for her hours worked in excess of forty (40) hours in a workweek, including at an overtime rate of pay.

40. From approximately October or November 2016 to September 15, 2017, Plaintiff usually recorded only forty (40) hours of work per workweek on her timesheets because the Executive Directors at Defendant's Sheboygan, Wisconsin location made it clear to her that she would not be compensated for any hours worked in excess of forty (40) hours in a workweek, including at an overtime rate of pay.

41. From approximately September 2016 to September 15, 2017, Defendant had knowledge that Plaintiff was customarily and frequently working in excess of forty (40) hours per workweek.

42. From approximately September 2016 to September 15, 2017, Defendant held daily "Stand Up" meetings at its Sheboygan, Wisconsin location.

43. During these daily "Stand Up" meetings at Defendant's Sheboygan, Wisconsin location from approximately September 2016 to September 15, 2017, all of the Department Directors (Nursing, Dietary, Maintenance, Activities, and Office), including Plaintiff and the Executive Director, were in attendance.

44. During these daily "Stand Up" meetings at Defendant's Sheboygan, Wisconsin location from approximately September 2016 to September 15, 2017, Plaintiff discussed the work she anticipated or planned on performing that day, as well as the work she had performed the previous day.

45. During these daily "Stand Up" meetings at Defendant's Sheboygan, Wisconsin location from approximately September 2016 to September 15, 2017, Plaintiff often discussed, among other things, working "long days" and "at night."

46. During these daily "Stand Up" meetings at Defendant's Sheboygan, Wisconsin location from approximately September 2016 to September 15, 2017, Plaintiff often discussed, among other things, working more than forty (40) hours per workweek.

47. During these daily "Stand Up" meetings at Defendant's Sheboygan, Wisconsin location from approximately September 2016 to September 15, 2017, and particularly on Mondays, Plaintiff often discussed, among other things, the work she performed during the previous weekend (i.e., Saturdays and Sundays).

48. From approximately September 2016 to September 15, 2017, the Department Directors at Defendant's Sheboygan, Wisconsin location knew or had knowledge that Plaintiff was working more than forty (40) hours per workweek.

49. From approximately September 2016 to September 15, 2017, the Executive Directors at Defendant's Sheboygan, Wisconsin location knew or had knowledge that Plaintiff was working more than forty (40) hours per workweek.

50. From approximately September 2016 to September 15, 2017, the Department Directors and Executive Directors at Defendant's Sheboygan, Wisconsin location often accompanied and/or were in attendance at events that Plaintiff planned and attended, including on weekends.

51. From approximately September 2016 to September 15, 2017, the Department Directors and Executive Directors at Defendant's Sheboygan, Wisconsin location often communicated with Plaintiff via telephone and e-mail on nights and weekends regarding Plaintiff's job duties and work performed at Defendant.

52. From approximately September 2016 to September 15, 2017, the Department Directors and Executive Directors at Defendant's Sheboygan, Wisconsin location often discussed with Plaintiff that she (Plaintiff) was working on nights and weekends (making phone calls, sending and responding to e-mails, generating marketing materials, and planning events) without receiving any compensation.

53. From approximately September 2016 to September 15, 2017, the Department Directors and Executive Directors at Defendant's Sheboygan, Wisconsin location often discussed with Plaintiff that she (Plaintiff) was working more than forty (40) hours per workweek.

54. During the entirety of Plaintiff's employment with Defendant, it compensated her with bonus and/or commission payments.

55. The bonus and/or commission payments with which Defendant compensated Plaintiff were performance-based and non-discretionary in nature: the payments were made pursuant to a known performance or productivity formula and/or were announced and known to Plaintiff to encourage and/or reward her productive, positive, and efficient work performance.

56. Defendant compensated Plaintiff with the bonus and/or commission payments via direct deposit.

57. On or about September 15, 2017, Defendant terminated Plaintiff's employment.

58. As of September 15, 2017, Defendant compensated Plaintiff with an hourly rate of $26.1990.

59. During Plaintiff's employment with Defendant and from approximately September 2016 to September 15, 2017, Defendant suffered or permitted Plaintiff to work without appropriately and lawfully compensating her for all hours worked in a workweek, including but not limited to, at an overtime rate of pay for each hour worked in excess of forty (40) hours in a workweek.

60. During Plaintiff's employment with Defendant and from approximately September 2016 to September 15, 2017, Defendant failed to include Plaintiff's non-discretionary bonus and/or commission payments in her regular rate of pay for overtime calculation purposes.

61. Defendant's unlawful pay practices failed to compensate and deprived Plaintiff of the appropriate and lawful wages and compensation, including at an overtime rate of pay, due and owing to her, in violation of the FLSA and WWPCL.

62. Defendant knew or should have known that Plaintiff must be compensated for all hours worked (and for all hours Defendant suffered or permitted her to work) in a workweek in accordance with the WWPCL.

63. Defendant knew or should have known that Plaintiff must be compensated with overtime pay at a rate of time and one half for each hour worked (and for all hours Defendant suffered or permitted her to work) in excess of forty (40) hours in a workweek in accordance with the FLSA and the WWPCL.

64. Defendant had a statutory duty to comply with the FLSA and to remedy FLSA violations of which it was aware and/or of which it should have been aware.

65. Defendant owes Plaintiff earned and unpaid wages, including at an overtime rate of pay, for work performed during her employment with it for which she was not properly and lawfully compensated, plus an equal amount for liquidated damages, in an amount to be determined.

**FIRST CAUSE OF ACTION – FLSA VIOLATIONS (UNPAID OVERTIME)**

66. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

67. Section 207(a)(1) of the FLSA regulates, among other things, the payment of an overtime premium by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.

68. At all times material herein, Plaintiff was entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201 *et seq.*

69. Defendant violated the FLSA by failing to compensate Plaintiff with overtime premium pay of time and one half for each hour worked in excess of forty (40) hours in a workweek.

70. Defendant's failure to properly and legally compensate Plaintiff for all compensable work performed, including at the correct overtime rate of pay, was willfully perpetrated. Defendant has neither acted in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime premium pay described above pursuant to Section 216(b) of the FLSA. Alternatively,

should the Court find that Defendant acted reasonably and with good faith in failing to pay overtime premium pay wages, Plaintiff is entitled to an award of pre-judgment interest at the applicable legal rate.

71. As a result of the aforesaid willful violations of the FLSA's provisions, overtime compensation has been unlawfully withheld from Plaintiff by Defendant.

72. Plaintiff is entitled to damages equal to the mandated minimum wage and/or overtime premium pay within the three (3) years preceding the date of filing of the Complaint, ECF No. 1, plus periods of equitable tolling because Defendant acted willfully and knew or showed reckless disregard of whether its conduct was prohibited by the FLSA and otherwise engaged in wrongful conduct that prevented Plaintiff from asserting her claims against Defendant.

73. Pursuant to the FLSA, 29 U.S.C. § 216(b), successful plaintiffs are entitled to reimbursement of the costs and attorneys' fees expended in successfully prosecuting an action for unpaid wages and overtime wages.

### SECOND CAUSE OF ACTION – FLSA VIOLATIONS
### (NON-DISCRETIONARY COMPENSATION)

74. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

75. Defendant's pay practices failed to include non-discretionary compensation, such as bonuses and/or commissions, in Plaintiff's regular rate of pay for overtime compensation purposes.

76. Defendant's deliberate failure to properly compensate Plaintiff in such a fashion violated federal law as set forth in the FLSA.

77. Defendant's unlawful practice as it related to non-discretionary compensation failed to compensate and deprived Plaintiff of the appropriate and lawful overtime wages and compensation due and owing to her, in violation of the FLSA.

78. Defendant was or should have been aware that its unlawful practice as it related to non-discretionary compensation failed to compensate and deprived Plaintiff of the appropriate and lawful overtime wages and compensation due and owing to her, in violation of the FLSA.

**THIRD CAUSE OF ACTION – WWPCL VIOLATIONS (UNPAID OVERTIME)**

79. Plaintiff reasserts and incorporates by reference all paragraphs set forth above as if restated herein.

80. At all times material herein, Plaintiff was an employee of Defendant within the meaning of Wis. Stat. § 109.01(1r), Wis. Stat. §103.001(5), and Wis. Stat. §104.01(2)(a).

81. At all times material herein, Defendant was an employer of Plaintiff within the meaning of Wis. Stat. § 109.01(2), Wis. Stat. §103.001(6), Wis. Stat. §104.01(3)(a), and Wis. Admin. Code § DWD 272.01(5).

82. At all times material herein, Defendant employed Plaintiff within the meaning of Wis. Stat. §§109.01 *et seq.*, 103.01 *et seq.*, 104.01 *et seq.*, and Wis. Admin. Code § DWD 272.01.

83. During Plaintiff's employment with Defendant, she performed compensable work in workweeks for which she was not compensated.

84. During Plaintiff's employment with Defendant, she worked hours in excess of forty (40) per workweek for which she was not compensated time and one half.

85. Defendant willfully violated the WWPCL by failing to compensate Plaintiff for all hours worked, including at a rate of time and one half for each hour of overtime worked.

86. At all times material herein, Plaintiff regularly performed activities that were an integral and indispensable part of her principal activities without receiving compensation for these activities, including at an overtime rate of pay at time and one half.

87. The foregoing conduct, as alleged above, constitutes willful violations of the WWPCL.

88. As set forth above, Plaintiff sustained losses in compensation as a proximate result of Defendant's violations. Accordingly, Plaintiff seeks damages in the amount of her unpaid compensation, reimbursement for any expense purchases and/or materials purchased in conjunction with performing her job duties, injunctive relief requiring Defendant to cease and desist from its violations of the Wisconsin laws described herein and to comply with them, and such other legal and equitable relief as the Court deems just and proper. Under Wis. Stat. § 109.11, Plaintiff may be entitled to liquidated damages equal and up to fifty percent (50%) of the unpaid wages.

89. Plaintiff seeks recovery of attorneys' fees and the costs of this action to be paid by Defendant, pursuant to the WWPCL.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Order Defendant to make Plaintiff whole by providing reimbursement for unpaid wages, including but not limited to overtime wages and pre-judgment and post-judgment interest, and for all times spent performing compensable work for which Plaintiff was not properly paid as provided under the FLSA and WWPCL;

2. Grant to Plaintiff attorneys' fees, costs, and disbursements as provided by statute;

3. Grant to Plaintiff liquidated damages against Defendant; and

4. Grant to Plaintiff whatever other relief this Court deems necessary and proper.

**PLAINTIFF DEMANDS A JURY AS TO ALL TRIABLE ISSUES.**

Dated this 18th day of May, 2018

WALCHESKE & LUZI, LLC
Counsel for Plaintiff

**s/ *Scott S. Luzi*** _____
James A. Walcheske, State Bar No. 1065635
Scott S. Luzi, State Bar No. 1067405
David M. Potteiger, State Bar No. 1067009
Matthew J. Tobin, State Bar No. 1097545

WALCHESKE & LUZI, LLC
15850 W. Bluemound Road, Suite 304
Brookfield, Wisconsin 53005
Phone: (262) 780-1953
Fax: (262) 565-6469
jwalcheske@walcheskeluzi.com
sluzi@walcheskeluzi.com
dpotteiger@walcheskeluzi.com
mjtobin@walcheskeluzi.com